BIERBAUER *v.* WIRTH and others.

*(Circuit Court, E. D. Wisconsin.   December 22, 1880.)*

1. CONTRACT — IMMORAL CONSIDERATION — EMPLOYER AND EMPLOYE.—
   Expenses incurred by an employe in evading the process of a court,
   at the request and for the benefit of his employer, cannot be recovered
   upon a promise of re-imbursement.—[ED.

*Mr. McKenney,* for plaintiff.
*Mr. Jenkins* and *Mr. Perles,* for defendants.
Motion for a New Trial.

DYER, D. J.   The question to be determined in this case
arises on a motion for a new trial.   The action is one brought
by the plaintiff to recover for services rendered and disburse-
ments alleged to have been made by him between the first
day of April, 1875, and the first day of December, 1876, for
the defendants, who were the managers of a rectifying and
redistilling establishment at Milwaukee.   At the trial, it was
disclosed by the evidence introduced on the part of the plain-
tiff that about the first day of April, 1875, he was employed
as a book-keeper at the defendants' place of business; that he
rendered legitimate services as such book-keeper from that
day until the tenth day of May, 1875, when the defendants'
establishment, together with a large number of distilleries
and rectifying houses in Milwaukee, were seized by the gov-
ernment for frauds upon the revenue.   It appeared from the
testimony given by the plaintiff himself that in the evening
of the day of the seizure he made an arrangement with the
defendants, or some of them, by which he was to go out of
the jurisdiction of this court, so that he could not be reached
by its process, and his attendance compelled as a witness in
behalf of the government and against the defendants, in for-
feiture and criminal proceedings, which it was expected
would follow the seizures, and that he should remain away
until such proceedings should be terminated.   It appeared,
further, that the defendants promised him that in considera-
tion of such service the salary agreed to be paid him in his
original employment should continue, and that all expenses

he might incur during his absence, and consequent upon carrying out the arrangement on his part, should be repaid to him. Pursuant to this understanding, and more or less under the direction of the defendants, the plaintiff immediately went away, and thereafter traveled in various parts of the United States and Canada, sometimes under an assumed name, and sometimes not, and thus continued absent, for the purpose of avoiding the process of this court, until December 1876, when he returned. Most of the services and disbursements, for which this suit was brought, are those which the plaintiff claims he thus rendered and paid during the period of his absence under the circumstances mentioned.

At the trial it was held that the contract between the plaintiff and defendants, except for the service actually rendered as book-keeper between April 1 and May 10, 1875, was one which, if executed, tended to obstruct the course of public justice; that, consequently, it could not receive judicial sanction, or even toleration, and that the plaintiff could not recover either for the service he rendered the defendants in thus avoiding the jurisdiction and process of the court, nor the moneys he expended in carrying out such an unlawful enterprise. On the argument of the present motion it is not contended that there was any error in the ruling of the court as to the plaintiff's claim for services. Indeed, the case in its facts and circumstances, as disclosed by the plaintiff himself, is so flagrant that there can be, and ought to be, no ground upon which to base a right to recover for such a service. "Courts owe it to public justice, and to their own integrity, to refuse to become parties to contracts essentially violating morality or public policy by entertaining actions upon them. It is judicial duty always to turn a suitor, upon such a contract, out of court, whenever and however the contract is made to appear." *Wight* v. *Rindskopf*, 43 Wis. 348; see, also, *Badger* v. *Williams*, 1 Chipman, (Vt.) 137, and *Valentine* v. *Stewart*, 15 Cal. 387.

But it is insisted that the plaintiff is entitled to recover the amount of his actual expenses incurred and paid while absent at the instance and request of the defendants. The argument

v.5,no.4—22

in support of the point is that as the moneys so expended were paid out at the request of the defendants, the law will imply a promise to repay them, and that it is not necessary to go behind such request and implied obligation, and show the character of the employment which made the expenditure necessary; and *Armstrong* v. *Toler*, 11 Wheat. 258, and *Planters' Bank* v. *Union Bank*, 16 Wall. 483, are relied on in support of the plaintiff's claim to recover the moneys he has actually paid. Of the first-named case it is sufficient to say that it holds no more than that if an illegal act *is not the consideration of a contract, and is entirely disconnected from it*, the contract is valid, though the occasion for making it arose out of the existence of the illegal act. In the opinion of the court various cases arising in England are cited, all or most of which were cases where there were new and subsequent contracts between the parties, not stipulating a prohibited act, and entirely disconnected from a previous illegal act, although they were contracts for the repayment of money originally advanced in satisfaction of an unlawful transaction; and in which cases it was held that such new, subsequent, and independent contracts might be sustained in a court of justice; and the point of law decided in the principal case is that a subsequent, independent contract, founded on a new consideration, is not so contaminated by an illegal act which lies back of the contract itself as to render it unworthy of enforcement by the court.

The case of the *Planters' Bank* v. *Union Bank* was similar in principle. It was there held that "though an illegal contract will not be enforced by the courts, yet  *  *  *  where such a contract has been executed by the parties themselves, and the illegal object has been accomplished, the money or thing which was the price of it *may be a legal consideration between the parties for a promise, express or implied*, and that the court will not unravel the transaction to discover its origin." The alleged illegal acts in question in the case cited were not acts involving moral turpitude. They were not acts *mala in se*. One question involved and illustrating the character of the case was whether an action would lie for the pro-

ceeds of the sale of confederate bonds which had been sent by the plaintiff bank to the defendant bank for sale, and which had been sold by that bank and the proceeds carried to the credit of the plaintiff. And the court say: "It may be that no action would lie against a purchaser of the bonds or against the defendant on any engagement made by him to sell. Such a contract would have been illegal. But, when the illegal transaction has been consummated; when no court has been called upon to give aid to it; when the proceeds of the sale have been actually received, and received in that which the law recognizes as having had value, and when they have been carried to the credit of the plaintiffs,—the case is different. The court is there not asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the defendants have in hand a thing of value that belongs to them."

The case at bar is plainly distinguishable from both this case and *Armstrong* v. *Toler*. Here the court is called upon to give aid to the enforcement of an unlawful contract. The agreement to re-imburse the plaintiff his expenses incurred in keeping himself beyond the process of the court was as much infected with the taint of immorality and illegality as was the promise to pay a compensation for the service. It is not the case of a subsequent independent contract between the parties to pay the moneys here claimed, founded on a new consideration and disconnected from the illegal act. It is not the case where an illegal object was accomplished, and the money which was the price of it was then made the consideration for a new promise, express or implied. The defendants in effect said to the plaintiff if you will do certain acts for the purpose of obstructing public justice we will compensate you for the service and re-imburse you the expenses you incur in doing them. Upon this promise the plaintiff acted and paid out his money. Upon this promise necessarily rests his right of action, and so it becomes essential, in showing the consideration for the promise, to "unravel the transaction and discover its origin." There was no other consideration for the expenditure of the moneys than

the original unlawful consideration. Further discussion of the point is unnecessary. On the faith of the agreement which the plaintiff made with the defendants he advanced the moneys which he seeks to recover. The whole transaction was illegal, and the plaintiff having thus voluntarily put himself in a position where he was exposed to the liability of loss, he cannot ask the court to extricate him from that position.

Motion for a new trial denied.